SUSAN M. CHEHARDY, Judge.
| ¿The defendant, Ingram Barge Company, appeals a preliminary injunction issued to prevent Ingram from mooring or docking its boats and barges on the plaintiffs’ property. We affirm.

FACTS

The plaintiffs are owners of five contiguous tracts of immovable property with 1,500 feet of batture frontage along the Mississippi River in St. James Parish, near mile marker 162.[1] On June 30, 2005, the plaintiffs filed suit against Ingram Barge Company, alleging the defendant “has docked, moored, parked, and trespassed” upon the property owned by the plaintiffs, without the plaintiffs’ permission, and without a lease agreement granting a right to enter upon, and use said property.
The petition states:
On June 30, 2004, Defendant has used the batture frontage of Plaintiffs’ property, without permission of Plaintiffs, for a ‘parking’ area for river line boats which transfer barges up and down the Mississippi River.
The Defendant’s actions were and are in contravention of La.R.S. 9:1102.1 and the Rules of the |3South Louisiana Port Commission, which is the deep water port commission having authority in St. James Parish pursuant to La.R.S. 34:2471, et seq.
The plaintiffs allege the defendant has never obtained any right to use the batture frontage owned by the plaintiffs, nor has the defendant acquired from the plaintiffs any of their riparian and/or real rights to the described property.
The plaintiffs assert the defendant’s actions are an unlawful invasion of the plaintiffs’ property, constituting trespass, and the defendant has failed and refused to comply with their request to cease and desist from blocking off and using the plaintiffs’, batture without leasing it from the plaintiffs.
The plaintiffs claim the defendant is liable to them for all damages incurred by them as a result of the trespass, including but not limited to physical damage to the plaintiffs’ property, loss of use, and inconvenience. They assert the defendant is obligated to restore their property to its former condition, but admit their damages do not exceed $50,000.00.
*1187 The plaintiffs sought a preliminary injunction under La.C.C.P. art. 3663, enjoining and prohibiting the defendant, its des-ignees, and its assigns from entering upon or in any way using or obstructing their batture frontage at any time for any reason in the conduct of barge fleeting and shipping operations. They seek a permanent injunction in due course, to the same effect.
Ingram contested the request for an injunction, asserting that (1) it has not violated La.R.S. 9:1102.1, and La.R.S. 9:1102.1 is inapplicable under the facts of this case; (2) the plaintiffs are not entitled to injunctive relief under La.C.C.P. art. 3663, because the plaintiffs cannot show a trespass on the part of Ingram that occurred within the past year that is continuing in nature; and (3) the plaintiffs are not entitled to injunctive relief and will not succeed at the trial for a permanent injunction because both Louisiana and federal law allow Ingram to use the bank of |4the Mississippi River in front of the plaintiffs’ batture property for all purposes incidental to navigation.
At a hearing on July 26, 2005, the plaintiffs presented testimony from Edward Rome, a former owner of part of the land in question, and from Audry Rome, Jr., a current owner of part of the land. The witnesses made clear their primary interest is in receiving lease payments from Ingram for use of their land.
Edward Rome testified he had transferred his interest in the property to his daughters, plaintiffs Renee Dyer and Phyllis Babin. He said he is very familiar with the property and with the river bank up and down from the property. He has seen boats and tows lying alongside their riverbank for many years, from other companies besides Ingram.
Edward Rome visited the property on June 30, 2004 — within one year of the date this suit was filed — and took photographs of barges bearing the name “Ingram” parked on the bank, pushing against the levee.
According to Edward Rome, the plaintiffs’ property has no improvements along its riverfront, and the plaintiffs do not conduct any business operations from its waterfront. They have never applied for a permit to use the frontage for barge fleeting. Back in the early 1980s, they were offered $15.00 a front-foot for a 15-year lease of the property. The majority of the owners thought that was not enough, and declined the offer. More recently, CGB made them an offer of $10.00 a front-foot, but they turned it down.
They previously obtained an injunction against ACBL (American Commercial Barge Line), and a second one against Welcome Fleet and Barge Service, Inc.
Audry Rome, Jr. testified he and his family own part of the property in question. He witnessed barges parking on the property many times in the year | ¡^preceding the hearing — he said they were “using it like a Wal-Mart parking lot.” The family had no leases with any barge companies, however, and no one in the family had ever given permission for barges to park on the property.
Audry Rome, Jr. testified the barges sometimes park so close to the levee they push into the concrete mats and crack them. Asked whether he had specifically seen Ingram Barge Company boats, he said, “It’s kind of hard to tell sometimes because you can’t make out the name on the barges, especially the barges, and the tugs.” He said he had seen an Ingram Barge Company tow and boat there, but didn’t know the exact time and date
The defendant presented testimony from Mark Aylor, Larry Marse, and Frank Chambless. Aylor is general manager of CGB Marine Services, a barge fleeting *1188 service with premises located immediately upstream from the Rome property. CGB has no corporate relationship with Ingram.
Aylor testified that CGB has tried to get permits from the Army Corps of Engineers to allow moor-barge fleeting in that area, but permits were refused. Aylors said the Corps of Engineers does not want anything moored at that point in the river for safety reasons. Nevertheless, Aylor said, although CGB cannot get permits for moor barges in the area, it has tried to lease the Rome property, offering $10.00 a foot on two different occasions. The landowners have refused at that price.
According to Aylor, sometimes other companies’ barges and tow boats stop alongside the open bank below CGB’s facility, but CGB does not request payment for that because “we just don’t have any right to it ... they do it up and down the river all over the place.”
Aylor said that CGB has placed marker stripes on the levee to separate CGB’s property from the Rome property, so the boats will “hit” on CGB’s [^property and not on the Romes’ land. Aylor said repeatedly that CGB is “trying to be a good neighbor.”
Aylor said his company does not have an economic use for the Romes’ batture property and no plans to install permanent mooring, but needed the injunction lifted.
Larry Marse, fleet operations manager for CGB Marine’s facility in Convent, testified he placed a red marking on the revetment to indicate to their customers’ pilots a point on the river where they can stop. Boats from non-customers’ fleets stop in that area also, but CGB does not charge them for parking. Because of complaints from the Romes, he placed the yellow marker to show CGB’s customers where to park so as to say within CGB’s leased property. He said they did it “just to keep peace with the neighbors.”
When he met with the Romes, Marse told them CGB was offering a lower price for the property than others because the property had no value for CGB’s operations and could only be used to park barges.
Captain Frank Chambless, a towboat captain with Ingram Barge Company, testified he stops regularly at the CGB Convent facility when fleeting barges. He has sometimes observed tows owned and operated by other companies stopped at all of the locations nearby. To make a landing with a tow, he slows the tow down to the point where there is no headway and then lets her settle sideways into the bank, letting the lead barge touch. The tow boat is positioned at the other end of the tow, out in the river. They cannot stop in the middle of the river at that point because it’s what they term a heavyset on the east bank and they would be in the flow of traffic, similar to stopping on the Interstate.
Chambless stated they have to stop from time to time in different places, sometimes for weather concerns such as rain or fog, sometimes smoke, sometimes |7mechanical issues. When such a stop is necessary, they look for an open place on the bank to stop. The ability to stop in an open area along the bank is essential to their ability to navigate the tow up and down the river.
The trial court issued an order on August 12, 2005 granting a preliminary injunction in the plaintiffs’ favor, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that a preliminary injunction issue ... herein restraining, enjoining and prohibiting Ingram Barge Company from mooring, docking, or otherwise holding line boats, tugboats, barges, or any other vessels against the riverbank itself (being the land lying between the ordinary low and ordinary high stage of the water), as well as *1189 prohibiting bringing line boats, tugboats, barges or any other vessel in contact with the river , bottom immediately adjacent to the riverbank so as to hold the vessel or barge in place against the current, along the property of the plaintiffs as described in the documents attached to plaintiffs’ petition. This injunction does not prohibit any actions taken by Ingram Barge Company which are necessary for safe navigation and in response to a safety or emergency situation. This injunction applies to Ingram Barge Company, its officers, directors, agents, employees, and all persons, firms, vessels, barges or corporations acting or claiming to act on its behalf or under its direction.
On appeal Ingram asserts the trial court erred in granting plaintiffs a preliminary injunction (1) because Ingram has not violated La.R.S. 9:1102.1, and (2) because plaintiffs are not entitled to injunctive relief pursuant to La.C.C.P. art. 3663 in that (a) they did not prove a trespass on the part of Ingram within the past year that is “continuing” in nature, and (b) they will not succeed at the trial for a permanent injunction because both Louisiana and federal law protect Ingram’s right to use the banks and bottoms of the Mississippi River in front of plaintiffs’ batture property for all purposes incidental to navigation.
LAW/ANALYSIS
La.C.C. art. 456 states:
|sThe banks of navigable rivers or streams are private things that are subject to public use.
The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
LSA-R.S. 9:1102.1 provides, in pertinent part:
A. Riparian owners and their lessees of property on navigable rivers ... within the limits of any deep water port commission of this state, ... shall have the right to erect and maintain on the batture or banks owned or leased by them and in the bed of the navigable river ... adjacent to or adjoining such batture or banks, such wharves, buildings, or improvements as may be required for the purposes of commerce, navigation, or other public purposes....
This Court has held, “Riparian landowners, by virtue of Louisiana Revised Statute 9:1102.1, own the right to erect and maintain on the batture, banks, and bed of the river, buildings and improvements as may be required for commerce, navigation, or other public purposes.” Kliebert Educational Trust v. Watson Marines Services, Inc., 454 So.2d 855, 858 (La.App. 5 Cir.), writ denied, 457 So.2d 682 (La.1984), appeal dismissed, 471 U.S. 1050, 105 S.Ct. 2108, 85 L.Ed.2d 474 (1985).
In Kliebert, the defendant was warehousing barges on the river without first negotiating a lease agreement or attempting to obtain authorization from anyone in this state. The plaintiff landowners were granted an injunction, ordering the barge fleeting company to cease the warehousing of barges immediately in front of their properties and to remove any buoys and anchor pilings from the river bed.
In Kliebert, 454 So.2d at 858, we concluded:
There is no Louisiana statute which grants a right to erect and maintain buildings and improvements on the river to persons other than riparian landowners and their lessees, the negative implication being that only landowners and their lessees have this right. The language of Louisiana Revised Statute *1190 9:1102.1, “and their lessees,” indicates a presupposition that a nonjlandowner9 must obtain a lease from the riparian owner before seeking authorization of his commercial purposes from the Port Commission. The plaintiffs have standing to protect their right against the defendant who, prior to the trial court’s judgment, had been warehousing barges on the river without first negotiating a lease agreement or attempting to obtain authorization from anyone in this state.
In this case, there is no showing that the defendant has erected or attempted to erect any structure on plaintiffs’ land. Nevertheless, as in Kliebert, the defendant is trespassing on the plaintiffs’ land by butting the noses of barges up against the riverbank.
La.C.C.P. art. 3663 states:
Sequestration of immovable property or of a real right therein involved in a possessory or petitory action during the pendency thereof is available under the applicable provisions of Chapter 1 of Title I of Book VII.
Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment. The defendant asserts the plaintiffs
failed to establish any part of the prima facie case under Article 3663, because they did not prove a “disturbance in possession,” or trespass, on the part of Ingram within the past year. Further, the defendant contends, the plaintiffs failed to prove that Ingram will likely “trespass” on plaintiffs’ property in the future. The defendant relies on the testimony of Ingram’s witnesses that the adjacent landowner, CGB, has attempted to be a good neighbor by providing better markings of the property line between CGB’s land and the plaintiffs’ land within the past year, and that CGB requests all captains 1 ^delivering tows to CGB’s fleet to land their tows on CGB’s property, not the plaintiffs’ property.
Under La.C.C.P. art. 3663, however, in-junctive relief is available to the plaintiffs to protect their ownership, possession or enjoyment of their property without a showing of irreparable injury, with no requirement for plaintiffs to make a showing of irreparable harm. Barrilleaux v. NPC, Inc., 97-2040 (La.App. 1 Cir. 12/29/97), 704 So.2d 449, 451.
For the foregoing reasons, therefore, the judgment is affirmed. Costs of this appeal are assessed against the appellant, Ingram Barge Company.

AFFIRMED.

. There are 19 individual plaintiffs and five tracts of land involved. Audrey Rome, Jr., Gayle Rome, William Rome, Fernand Rome, Carol Rome, Lillie R. Dileo, Sadie R. Carey, and Margaret R. Vargas are co-owners of one tract of land; Phyllis Rome Babin, Renee Rome Dyer, and Ethelyn N. Rome are co-owners of the second; Gladys R. Fife is owner of the third; James Friloux and Roy Weber are co-owners of the fourth; Henry O. Gau-det, III, Celeste Gaudet Melancon, Michael J. Gaudet, Paul Myron LeBlanc, and Elaine L. Bryson are co-owners of the fifth.